MARY E. HOLMES, Respondent, v. PROTECTED HOME CIRCLE, a corporation, Appellant.

St. Louis Court of Appeals.   Submitted on Briefs May 8, 1918.
Opinion Filed June 4, 1918.

1. **INSURANCE:** Fraternal Benefit Insurance: Cause of Death: Question for the Jury.  Where the testimony in the case as to the cause of insured's death was conflicting, and there being substantial evidence to sustain the theory of plaintiff, that made it a case for the jury.

2. **APPELLATE PRACTICE:** Verdict of Jury: Conclusive on Appeal.  The findings of a jury as to the cause of death of insured based on conflicting evidence is conclusive on the appellate court.

3. **INSURANCE:** Fraternal Benefit Insurance: Proofs of Death: Cause of Death:   Statements of Physician not Conclusive.   Where there was a conflict between the statement in the proofs of death made by the beneficiary and that made by the physician, it could not be said that filing the certificate of the physician constitutes such an admission against interest as to be conclusive upon plaintiff in the action.

4. **INSTRUCTIONS:** Defining Terms: Burden.   Using   the   word "burden" in an instruction, undefined, is not reversible error, such word being a plain, common, word, easily understood by any one fit to sit on a jury.

5. ———: Jury: Not to Speculate or Guess: Evidence.   Telling the jury in an instruction that in determining whether insured died from excessive use of morphine, they are not to speculate or guess, is not error.

6. ———: Cause of Death: Evidence.   An instruction that told the jury plaintiff was entitled to a verdict unless the jury found and believed from the evidence that insured came to his death from the excessive use of morphine, presented the issue fairly, clearly, and intelligently.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*R. P. & C. B. Williams* for appellant.

*Hon. A. W. Williams* Of Counsel.

(1) It was misleading, prejudicial and erroneous to tell the jury, as was done in instruction No. 1, that in determining whether or not the assured's death was caused by the excessive use of morphine, the jury should not speculate or guess. Pepperkorn v. St. Louis Transfer Co., 171 Mo. App. 709, 154 S. W. 836; State ex rel. v. Ellison, 187 S. W. (Mo.) 23. (2) It was error to tell the jury that the burden of proof was on the defendant as to the issues raised by the answer, without defining the term "burden of proof." Walsh v. Insurance Co., 162 Mo. App. 546; Miller v. Elder, 160 Mo. App. 399; Prince v. Compress Co., 112 Mo. App. 49; Clarke v. Kitchen, 52 Mo. 317. (3) Defendant's demurrer to the evidence at the close of the whole case should have been sustained, because of the admission of the beneficiary in the proofs of death that the assured came to his death from the excessive use of morphine. Such manner of death avoided the certificate under the contract and by-laws of the defendant. Castens v. Supreme Lodge Knights and Ladies of Honor, 190 Mo. App. 57; Stephens v. Metropolitan Life Insurance Co., 190 Mo. App. 679. (4) When the beneficiary sends in to the home office proofs of death which have attached thereto an affidavit or statement of the attending physician as to the cause of the death, this is binding on the beneficiary as an admission and precludes recovery. Castens v. Supreme Lodge Knights and Ladies of Honor, 190 Mo. App. 57; Stephens v. Metropolitian Life Insurance Co., 190 Mo. App. 679. (5) Instruction No. 2 was erroneous because it in effect told the jury that they could not find

for the defendant unless they believed that the death of the assured was caused solely by the excessive use of morphine, and this was not cured by defendant's instructions correctly defining the law. Redpath v. Lawrence, 42 Mo. App. 102; Bludom v. Ry. Co., 108 Mo. App. 437; Standard Oil v. Meyers, 74 Mo. App. 447; Walker v. White, 192 Mo. App. 13; Hall v. Coal Co., 260 Mo. 351; Traylor v. White, 185 Mo. App. 325; Ghio v. Schaper Bros., 180 Mo. App. 6; Wojtylak v. Kansas, 188 Mo. 260.

*William J. Jones* for respondent.

(1) The court did not err in telling the jury, in plaintiff's insctruction No. 1, that in determining whether or not assured's death was caused by the excessive use of morphine, the jury should not speculate or guess. Vormehr et al. v. Knights of the Maccabees of the World, 200 S. W. 76, 79. (2) The phrase "burden of proof" was not used in plaintiff's instruction No. 1. The trial judge may, with propriety, refuse an instruction containing the unexplained expression "burden of proof,' and with equal propriety may give such instruction in cases where it does not tend to confuse or mislead the jury. Whether or not the phase should be defined, depends on the context, and the connection in which it is used. Cramer v. Nelson, 128 Mo. App. 379; Morton v. Heidorn, 135 Mo. 608, 617; Jones v. Durham, 94 Mo. App. 51, 54-55; Berry v. Wilson, 64 Mo. 164, overruling Clarke v. Kitchen, 52 Mo. 317, and similar cases; Steinwender v. Creather, 44 Mo. App. 356, 360. (3) (4) Defendant's demurrer to the evidence at the close of the whole case was properly overruled. The attending physician's affidavit in the proofs of death as to the cause of death is not binding on the beneficiary as an admission and does not preclude recovery. It was contradicted by and in direct conflict with the cause assigned in the affidavit of the beneficiary in such proofs of death. The cause of death, so far as the same was disclosed by the proofs of death and the evidence in this case, did not

present a question of law for the court, but a question of fact for the jury. Bruck v. Hancock Life Insurance Co., 194 Mo. App. 529, 537-541; Vormehr v. Knights of Maccabees, 200 S. W. 76, 78; Zinke v. Knights of Maccabees, 200 S. W. 99; Bamberge v. Tribe of Ben Hur, 159 Mo. App. 102. (5) Plaintiff's instruction No. 2 was not erroneous; it did not in effect tell the jury they could not find the defendant unless they believed the death of assured was caused solely by the excessive use of morphine. The instructions in a case are to be read and considered together, for a partial view in one instruction may be helped out by another instruction. Traylor v. White, 185 Mo. App. 325, 331; Hughes v. Railroad, 127 Mo. 447, 452-3; Owen v. Railroad, 95 Mo. 169, 181; Swafford v. Spratt, 93 Mo. App. 631, 637.

REYNOLDS, P. J.—This is an action on a benefit certificate issued to the husband of plaintiff, plaintiff named as beneficiary, defendant association agreeing to pay her $1500 within 90 days after receipt by defendant of satisfactory evidence of the death of the husband.

The petition avers that the husband had complied with all the requirements as to payments, and that he died on July 1, 1913; that plaintiff had furnished the necessary proofs of death, and that defendant had refused to pay, judgment is demanded for $1500, with interest from November 1, 1913.

The answer, admitting the incorporation of defendant, and issuing of the certificate, and that proofs of death had been furnished, sets up that after the issue of the policy, a by-law had been adopted to the effect that the benefit certificates issued to a member should become void and all benefits thereunder should be forfeited "in case the member shall use intoxicants, opiates or other narcotics to such excess as to directly or indirectly cause his death." Averring that the deceased had become addicted to habitual and intemperate use

of morphine, which directly contrubuted to and caused his death, defendant denies liability.

There was a reply to this, and a trial before the court and jury, which resulted in a verdict and judgment for plaintiff for the amount claimed, from which defendant has duly appealed.

Along with the proof of death was the statement of the attending physician, that he had first attended the decedent June 26, 1913, and again June 29th, and that he died July 1st; that the exact nature and duration of the disease of which the decedent died was, "Morphine habit for years; morphinism and exhaustion." The beneficiary in her statement gave as the cause of death, "Overheated about a year ago; never really well since. Heat again affected him. Unable to work eight days; in hospital six days."

There was testimony to the effect that the deceased had suffered an attack of heat prostration about a year before and again a few days before he was taken to the hospital, where he died, and that he had also had a fall from a ladder which had injured his head and rendered him unable to work or attend to business for quite a while.

The physician who had signed the certificate above referred to, a member of the staff of the hospital to which deceased had been sent, on being examined as a witness, gave it as his opinion that he had died from morphinism, but admitted that he had not applied the usual tests to determine that; had only examined and treated the patient two or three times while at the hospital, a few days before his death; knew nothing of his previous history. Another physician, who was the family physician of the decedent but had not attended him professionally in his last illness, testified that about a year before the death of the insured, he had treated him for heat prostration, from which he was suffering; had sustained a heat stroke; that he had been sick from that for two or three weeks, during which time he was under the care of witness. Decedent had also been

afflicted with a hydrocele, necessitating the drawing off of water from a sack. Witness had tapped decedent every two or three months, the decedent coming to his office for that purpose. In June, 1913, the witness was called in to attend decedent and found him again suffering from a heat stroke and delirious; that was four or five days before he was sent to the hospital, which occurred on the advice of this physician, the patient being so violent that witness deemed it best to have him sent to a hospital and he was accordingly sent to the Alexian Brothers' Hospital, the only private hospital in the city where mental diseases are treated; saw him once after he was at the hospital, not professionally, however; just went down there so that he could tell the family how he was doing; had examined him before he was sent to the hospital and from his symptoms determined that he was suffering from over heat; had the ordinary, usual symptoms indicating that. All the examination he made of him at the hospital was to walk in by his bed and feel of him, and saw that he was unconscious; that was either the day, or the day before, he died; not more than twenty-four hours before his death. The weather in June, 1913, was "pretty hot weather;" thought we had had an extraordinarily hot June that year. Witness had examined decedent four or five days before he was sent to the hospital on the occasion of his last sickness. In his opinion the man had died from cerebral congestion, a form of brain fever but in the case of this man it was caused by the fall, which he had had sometime before, and by those two strokes of over heat. Asked if during the time that he had examined decedent, he showed any symptoms of chronic toxine or morphine poisoning, he answered that he did not and that he (witness) never saw a man when he could detect that he was a user of it, but decedent had told him a year prior to his death that he used it; that if he had not told him, witness could not have detected it; the only way to detect a chronic user of morphine is to place him where he cannot get it and it will soon tell itself then. This

physician did not say to what extent the decedent told him he had used morphine.

A number of the fellow workmen of the decedent, who was a stationary engineer, many of them having worked with him for over twenty years, testified to the fact of his having suffered on two occasions mentioned from heat prostration to the extent of being disabled from work, and also to his having sustained a fall from a ladder, which rendered him unconscious, he striking his head. Every one of these testified that being with him from day to day for a long period, they had never seen any indication of his using narcotics or morphine in any form, nor at any time showing any symptoms of being under the influence of drugs.

In short, the testimony in the case as to the cause of death was conflicting, there being substantial evidence to sustain the theory of plaintiff. That of course made it a case for the jury and its finding on that is conclusive on us, and its verdict and the judgment must stand unless the jury were wrongfully instructed or some error occurred in the progress of the trial. As to the latter, there is no claim. Certain instructions are complained of.

Appellant claims that plaintiff is bound by the statement of the physician which she forwarded with proofs of death. While that certificate gives morphinism as the cause of death, the statement of the beneficiary gives an entirely different cause. In other words, they conflict.

In Bruck v. John Hancock Mut. Life Ins. Co., 194 Mo. App. 529, 185 S. W. 753, we held that where there was a conflict between the statement in the proofs of death made by the beneficiary and that made by the physician, it could not be said that filing the certificate of the physician constitutes such an admission against interest as to be conclusive upon plaintiff in the action. That is the situation here. As before said, it left it a question for the determination of the jury.

Complaint is made of the first instruction given at the instance of plaintiff, in that it told the jury that they could return a verdict for plaintiff unless they found and believed from the evidence that the death of John W. Holmes was brought about directly or indirectly by the excessive use of morphine; and that the burden of proof was on defendant to prove that John W. Holmes died from the excessive use of morphine; and that in determining whether his death was caused by such use of morphine, the jury should not speculate or guess, but if they were unable to determine from the evidence whether or not his death was so caused, their verdict should be for plaintiff for the face of the benefit certificate.

We see no error in this. It is claimed that the word "burden" should have been defined. Speaking for myself, I think not. It seems to me that is a plain, common, word, easily understood by any one fit to sit on a jury. To attempt to do so is "to illustrate the obvious, explain the evident, and expatiate upon the commonplace." At any rate, using it undefined, is not reversible error. [Berger v. St. Louis Storage & Commission Co., 136 Mo. App. 36, l. c. 43 and cases there cited, 116 S. W. 444.]

Nor do we find any error in telling the jury that they are not to speculate or guess. This was here used on an entirely different state of facts from those present in Peperkorn v. St. Louis Transfer Ry. Co., 171 Mo. App. 709, 154 S. W. 836, and in State ex rel. Detroit Fire & Marine Ins. Co. v. Ellison et al., 187 S. W. 23, a decision by our Supreme Court, not officially reported, where their use was condemned.

Instruction No. 2, given for plaintiff, is complained of. That told the jury that plaintiff was entitled to a verdict of $1500, with interest at six per cent per annum from the first of November, 1913, unless the jury found and believed from the evidence that John W. Holmes came to his death from the excessive use of morphine. We see no error whatever in this. It presented the issue clearly, fairly and intelligently

The law as to these cases has been so often before our courts that we do not think it necessary to enter into an enumeration or citation of authorities *in extenso*. It is sufficient to say, summarizing, that there was ample evidence to sustain the verdict, that there was no error in the instructions, and that we find no reversible error in the case.

The judgment of the circuit court is affirmed. *Allen* and *Becker, JJ.,* concur.