JAMES EDWARD CHRISTMAN, BY NEXT FRIEND, RESPONDENT, v. MARY HICKMAN, APPELLANT.—37 S. W. (2d) 672.

Kansas City Court of Appeals. March 2, 1931.

*Malcom S. Garrard* for respondent.

*Charles N. Sadler* for appellant.

CAMPBELL, C.—This is an action to recover damages for an alleged assault and battery. Plaintiff recovered judgment for $500 actual damage; and defendant appeals.

It is alleged in plaintiff's petition that he was a pupil in the Yeager School, a public school in Kansas City, Missouri; that defendant was a teacher in said school; that on the 19th of May, 1926, the defendant did whip, beat, bruise, wound and illtreat the plaintiff, who was then nine years of age, with a broom stick or large stick and did deliberately, in an unreasonable, cruel, and excessive manner strike plaintiff upon the legs and other parts of his person, and did whip and strike him therewith between twelve and thirty times, in consequence of which his right hand was bruised, his thumb dislocated, his pelvic bones and hips bruised and displaced, making one hip lower than the other, and the bones of his left leg bruised, broken, fractured, splintered or cracked; that permanent deformity and injury resulted; that such acts of defendant were willful, malicious, wrongful and unlawful.

Defendant's answer is a general and specific denial, and an allegation that defendant was a teacher in the public schools of Kansas City at the time and place alleged and that the punishment administered to plaintiff by her "was made in good faith for the purpose of correcting him and was necessary to maintain discipline in said school; was reasonable and moderate, and caused no injury." and mother, two sisters and a brother; that he was a pupil in the

Plaintiff testified that he lived in, Kansas City with his father

school at the time and place alleged; that defendant was a teacher in that school; that in the forenoon of May 19, 1926, she whipped him because he was unable to give a correct answer to a question; that she struck him twenty-five or thirty times with a broom stick, during which time he was crying and screaming and endeavoring to break away from her; that while she was beating him he put his hand on his back to protect himself and that she hit his hand with the broom stick, knocked the thumb out of place and otherwise injured the hand; that his left leg became stiff right away; that he left the school room at noon on that day and went to his home, being helped a part of the way by a fellow pupil; that as he was going out of the school room on this occasion the defendant said to him: "If there was any complaint, you better look out;" that he went home, was examined by his mother who thereupon took him to the school building in a car; that upon arrival at the school building he saw Miss Richards who called defendant, showed her the marks, and defendant said "that she didn't think she beat me that many times and didn't beat me as hard as she did, and no boy deserved such a whipping as she gave me;" that he then went to his home, remained a few minutes and was then taken to the Board of Education at the public library where he saw Mr. Cammack; that he then went to a doctor's office and received treatment for the injury to the thumb; that two days later his mother took him to Dr. Ford who undressed him but would not examine him; that he was taken by his mother and Dr. Ford to the Lakeside Hospital and by them carried up the steps; that an X-ray was taken and he was put in a plaster paris cast, the cast covering his body from a little above the hips to a little past the ankle of the left leg; that he remained in the cast for several weeks; that after the cast was removed he thereafter walked with a limp; that when he went to school the following September it was necessary for him to sit on a pillow.

It appears the case has been tried three times. Excerpts from the evidence of plaintiff at one or the other of the former trials was introduced and it is shown therein that his evidence in the instant case and his evidence at one of the former trials was not entirely consistent.

A number of the pupils in the Yeager School who were present at the time of the alleged whipping testified in substance that defendant did whip plaintiff with a broom stick or pointer but none of them, with one exception, made any statement relative to the force used by the defendant. One of them said: "well, it seemed like she didn't strike him so very hard but she struck him fast."

Expert and other evidence was offered by plaintiff corroborating the extent and severity of his injury.

In defendant's behalf a number of witnesses, including teachers in the school and pupils present at the time of the alleged whipping, testified to a state of facts tending to show that plaintiff was not injured; that he was a normal, healthy boy, took part in all gymnasium work and in all games and sports, climbed, jumped and run; that in a few days after the alleged injury and while plaintiff claims he was in a plaster paris cast, he was playing, running and jumping; that at other times when plaintiff claims he was using crutches he was carrying them under his arm and walking without a limp; that on one occasion a boy friend asked him if defendand really broke his leg, to which he replied with a sneer, turned and walked away and began limping; that it was not a broom stick the defendant used in whipping plaintiff but a much smaller stick that had been used as a pointer; that defendant did not touch plaintiff with her hands; that the whipping was not severe nor did it attract any special attention among the pupils.

Defendant, as a witness, said that she did whip the plaintiff, using a pointer and striking him some eight or ten times on the place where he "sits down;" that she considered she gave him a spanking: that she had not made the statements attributed to her by plaintiff and his mother; that shortly after the whipping and on the same day, she saw the plaintiff walking about in the school building, apparently unhurt; that she had been teaching in the public schools of Kansas City for several years and was teaching there at the time of the trial.

It is insisted by appellant the court erred in refusing a peremptory instruction requested by her at the close of plaintiff's case, and erred in refusing a like instruction tendered by her at the close of all the evidence.

The demurrers to the evidence were properly rejected, since there was ample evidence, if believed by the jury, to support the case pleaded. [Haycraft v. Grigsby, 88 Mo. App. 345, 360; State v. Koonse, 123 Mo. App. 655, 101 S. W. 139; Dix v. Martin, 171 Mo. App. 266, 157 S. W. 133.]

It is argued that plaintiff's evidence is opposed to physical facts and common observation and should be disregarded. An appellate court is not bound by evidence that is contrary to physical facts, but that rule is not applicable to the record in this case. In actions at law the jury is the sole judge of the weight of the evidence and credibility of the witnesses, and even though evidence is improbable, an appellate court cannot, for that reason, interfere with the verdict of a jury based thereon.

The assignments of error relating to the admison of testimony on the part of plaintiff are denied. The record reveals that objections in some instances were not made until after the questions were

answered; that in the other instances evidence to which an objection was made was properly admitted.

Complaint is made of plaintiff's instructions 1, 2 and 4. Instruction 1 told the jury that although teachers in public schools have a right under the law to inflict reasonable punishment upon the pupils, nevertheless, a teacher has no right to inflict unreasonable or excessive punishment upon the pupils, and if the jury found that the defendant did inflict unreasonable and excessive punishment upon the plaintiff, then they will find the issues in favor of the plaintiff. This instruction, by its terms, covers the whole case and authorizes a verdict in plaintiff's behalf if the jury found defendant did inflict unreasonable or excessive punishment. The only criticism leveled against this instruction by defendants is that it furnishes no guide for the jury in arriving at a verdict; that the terms unreasonable and excessive are not defined and that the instruction is confusing and misleading. Defendant has not cited any authority to support her contentions. The failure to define the words "unreasonable" and "excessive" is not reversible error. [Holmes v. Protected Home Circle, 199 Mo. App. 528, 535, 204 S. W. 202; Miller v. Firemen's Insurance Company, 206 Mo. App. 475, 493, 271 S. W. 1029.] While we do not want to be understood as approving the instruction, it is not vulnerable to the attack made upon it.

Instruction 2 tells the jury that in determining whether plaintiff was punished in an unreasonable and excessive manner, they may take into consideration the age and size of plaintiff, the instrument used by defendant in whipping plaintiff, if they find that she did whip him, and the nature of the offense. It is argued by defendant that the closing words of the instruction, "the nature of the offense," advised the jury that defendant had committed some offense. Obviously the jury would understand that the court told them an offense had been committed, the nature of which they had the right to consider. From the language used it is not entirely clear whether the term "offense" refers to an act of the plaintiff or an act of the defendant. It was not within the province of the court to determine, as a matter of law, whether an offense had been committed either by the plaintiff or by the defendant, nor was it proper for the court to use language in an instruction from which the jury would infer that the court was saying to them that an offense had been committed.

Instruction 4 told the jury that if they found the issues in favor of the plaintiff they would assess his actual damages, if any, at such sum as they found from the evidence to be a fair and reasonable compensation for the injuries, if any, the plaintiff sustained as a direct result of being struck or whipped, if they found he was struck or whipped, and that they may take into consideration any

physical pain which they believe from the evidence plaintiff suffered from said injuries.

By instruction 1 the court told the jury that if they found that defendant inflicted unreasonable and excessive punishment upon plaintiff, then the issues should be found in favor of plaintiff, without requiring the jury to find that plaintiff suffered any injury.

Many witnesses gave evidence tending to show that plaintiff did not receive any injury whatsoever as the result of the whipping.

It is clear the plaintiff by requesting instruction 1 asked the court to submit the case to the jury upon the theory that defendant had the right to inflict punishment upon plaintiff, and that he sought recovery only upon the theory that the punishment inflicted was unreasonable or excessive. By that theory the plaintiff is bound, and is therefor not entitled to recover unless he sustained injuries on account of the infliction of unreasonable or excessive punishment. Upon the theory, as submitted in said instruction 1, the punishment was lawful and proper up to the point when it became unreasonable or excessive. Plaintiff is therefore precluded from a recovery for the injury inflicted or the pain suffered before the punishment became unreasonable or excessive.

Instruction 4, however, authorized the jury to compensate the plaintiff for any injury sustained or pain suffered by him, even though he was, as defendant contends, merely spanked.

The instructions are erroneous in the particulars pointed out and, for that reason, the judgment is reversed and the cause remanded. The Commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by CAMPBELL, C., is hereby adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur, except *Trimble, P. J.,* absent.