STATE of Missouri ex rel. N. W. ELEC-
TRIC POWER COOPERATIVE, INC.,
a corporation, Appellant,

v.

Harry K. WAGGONER et al., Exceptions of
John H. Stephens and Eleanor Stephens,
Respondents,

No. 22840.

Kansas City Court of Appeals.

Missouri.

Jan. 12, 1959.

Rufus Burrus, Burrus & Burrus, Inde-
pendence, Russell N. Pickett, Eugene E.
Andereck, Phil Hauck, Pickett, Andereck
& Hauck, Trenton, for appellant.

Barkley M. Brock, and Poague, Poague &
Brock, Clinton, for respondents.

BROADDUS, Presiding Judge.

This is a proceeding in condemnation. Defendants John H. Stephens and wife Eleanor Stephens are the owners of a 240 acre tract of land located one-quarter mile north of Highway 24 and approximately three miles west of Buckner, Missouri. The Relator condemned a strip of land 100 feet wide and 3,779 feet long through the middle of the farm. The strip of land was condemned for a perpetual easement to construct and maintain a 169 KV electric transmission line across the defendants' farm. The line to be constructed on "H" frame structures with two poles to a structure approximately twelve feet apart. Five sets of structures were placed on the farm, the line entering at a point 496 feet west of the southeast corner of the farm and traveling diagonally in a northwesterly· direction across the center of defendants farm. The line crossed five fences as it transversed the defendants' property. The entire farm (240 acres), except for small ditches, a pond, and a small amount of timber can be and has been cultivated. Defendants were tilling a portion of the land where the line crossed and a portion was being used as pasture on August 10, 1953. Under the easement the relator retained the right to enter the strip at any time, retained the right to clear the area of all trees or buildings for a distance of fifty feet from the edge of the line, obtained the right to cut the defendants' fences and have the option of placing gates, but no obligation to place gates where the fences were cut, and the defendants were prohibited from maintaining any buildings or structures on the right of way without the consent· of the relator. The defendants produced three real estate men as expert witnesses to testify as to the damages and the relator produced three real estate experts to testify as to damages. The commissioners appointed by the trial court had awarded damages of $1,250. Both parties filed exceptions to the commissioners' report and submitted the matter to trial by jury. At the trial two of the three wit-· nesses the relator offered were commissioners.

Practically all of the witnesses for both relator and defendants agreed that the property was worth approximately $250 per acre prior to the damage, or a total of $60,000. The defendant John Stephens, who had farmed the land for twenty-five years, testified that he was damaged $6,000 by the condemnation. Elmer Ahmann, a real estate man and an attorney of Independence, Missouri, testified that he had known the farm for twenty-five years and that the damage was $6,000. C. A. Jones, a real estate man and farm manager with J. C. Nichols and Company for twenty-three years, testified that the damage was $6,000. Roy Winfrey, a real estate man of Independence, Missouri and soil conservation chairman of Jackson County, testified that the defendants' damage was $5,060.

For the relator D. R. Carmichael, banker and real estate broker, testified that the damage was $1,200. Robert Berry, a real estate agent and one of the commissioners testified the damage was $1,200. Cecil F. Shopen, real estate agent, placed the damage between $1,250 and $1,500. All three witnesses for the relator admitted that they had never had the experience of observing the sale of a farm before a power line such as this was constructed and the sale of it after such a power line was constructed. All three admitted that· they had no actual sales on which to base their opinion, and that it was purely an opinion.

The jury returned a verdict for the defendants in the sum of $4,200 from which judgment the relator appeals.

■ Relator's first contention is that the court erred in refusing to give its offered Instruction No. 9, which reads as follows:

"The Court instructs the jury that the burden of proving loss or damage to the Defendant land owners as a result of the appropriation of their land

by the Relator Power cooperative, rests upon the Defendant land owners.

"And you are further instructed that if the Defendant land owners have not proved by a preponderance or greater weight of the credible evidence, that they have been damaged in the manner and to the extent that they contend, then and in that event such damages should not be considered by you in rendering your verdict."

As is to be seen, the instruction did not tell the jurors that they should only allow such damages as were proven by the preponderance of the evidence, but told them that if defendants failed to prove their damages to the "extent that they contend" that they could recover no damages. The *extent* to which defendants *contended* that they were damaged was $6,000. Mr. Stephens so testified. Under this instruction if the jury believed (as it did) that defendants had only been damaged to the *extent* of $4,200 instead of $6,000, as they *contended*, it would have awarded defendants nothing. The instruction would have completely misled the jury and the trial court did not err in refusing it.

■ The relator refused to change the above Instruction No. 9, and refused to offer a corrected instruction. The court then, at defendants' request, gave Instruction No. 2A, which was the first paragraph of relator's offered Instruction No. 9. Relator contends that the absence of paragraph 2 made Instruction 2A defective because it did not contain a definition of the phrase "burden of proof". Our courts have held many times that the giving of an instruction containing the words "burden of proof" or "preponderance of the evidence" unexplained, is not sufficiently prejudicial to warrant a reversal of the judgment. Berry v. Wilson, 64 Mo. 164; Berger v. St. Louis Storage & Commission Co., 136 Mo.App. 36, 43, 116 S.W. 444; Holmes v. Protected Home Circle, 199 Mo.App. 528, 535, 204 S.W. 202; Stokes v. Godefroy Mfg. Co., Mo.,

85 S.W.2d 434, 439. We rule the point against relator.

■ Relator also contends that the trial court erred in refusing to strike the testimony of the witness, C. A. Jones, with respect to the differences in values before and after the appropriation. Mr. Jones testified that he had been a licensed real estate dealer for twenty-three years and was connected with the J. C. Nichols Company in Kansas City; that for some twenty years he had managed some lands in the vicinity of defendants' land; that he had listings in that area and was acquainted with the reasonable market value of real estate in that vicinity as of the date of the appropriation, which was August 10, 1953; that he was familiar with the terms of the easement in question. He then testified that the reasonable market value of defendants' 240 acre farm before the appropriation was $66,000, and after the appropriation it was $60,000; as he put it, "the land had been hurt $25 an acre." He further testified that he had buyers who refused to purchase farms which had highlines through them, and the fact that the relator had the right to enter defendants' land at any time effected the sale price and that from his experience he could definitely state that the presence of a line of this type would effect the reasonable market value of the property on the open market.

On cross-examination in order to test Mr. Joneses qualifications and the credibility of his testimony relator's attorney asked what there was about the power line that would make the land bring less money. The witness then said if the land was ever subdivided the F.H.A. and the V.A. would reduce the valuation. The witness then said: "You can't build under them. You have to pay taxes on the land. If it goes into a sewer district you have to pay taxes on the land you can't use." At the insistence of relator's counsel for more reasons the witness then said that he would not want to be hit on the head if one of the lines should snap. The witness further

testified that from an agricultural standpoint, "it costs you more to farm the land if you have to go around these structures; you can't cultivate between the poles." After asking the witness if the elements he had enumerated were the ones he had taken into account and receiving an affirmative reply, relator's counsel asked: "In other words, they account for more than 90% of the difference in value that you have in mind? A. Probably, at the moment." Thereupon relator's counsel said: "On the basis of that, Your Honor, I move that his testimony be stricken and disregarded because it has not been shown that it is not a fact that he has a right to take that into consideration because he has not shown it is susceptible of being subdivided and having sewers on it and it is all speculation and he had no right to take that into consideration in detailing his value. The Court: Overruled." It should be noted that relator moved to strike *all* of the testimony of Mr. Jones. It did not ask the court to strike out that portion wherein he referred to possible development or possible sewer district.

Later in the cross-examination, and in an attempt to strengthen his position, Relator's attorney suggested to the witness that he had said that 90% of the damages was based on potential use of this property for subdivision purposes. The witness denied that he had made any such statement and said in subsequent answers that he figured that the whole farm had been damaged 10% on the present day value. When asked what percentage of the $6,000 damages he attributed to inability to subdivide the land he answered that he was placing none. He further stated that he did not consider the land to be immediately available for subdivision nor in the immediate future.

From all the foregoing it is obvious that under pressure of relator's able counsel to itemize elements of damage the witness merely related matters which in some instances would have to be taken into consideration. The witness at no time stated that he had based his estimate of damage on inability to subdivide the property or the other elements complained of by relator. In the case of Texas-Empire Pipe Line Co. v. Stewart, 331 Mo. 525, 55 S.W.2d 283, our Supreme Court held that although the cross-examination disclosed that some of the causes of the farm's depreciation were remote and speculative under opinion testimony, a motion to strike out the *entire* testimony was properly denied. The contention lacks merit.

■ What we have said above also disposes of relator's additional point—that it was error for the court to refuse Instruction 10. By that Instruction Relator sought to withdraw from the jury's consideration as an item of damages any evidence based upon the possibility of subdividing the lands in question. As we have pointed out, Mr. Jones, before he left the stand made it clear that "no percentage" of his estimate of the damage to the farm was "attributable or chargeable to the fact that it can't be subdivided."

On the measure of damages the court gave Instruction No. 3 which is admittedly correct. It squarely placed before the jury the question of ascertaining the value of the property immediately before the appropriation and immediately thereafter. And in his final argument defendants' attorney plainly told the jury that no damages were being sought for any possible future inability to subdivide the property. We fail to see how relator was prejudiced by the failure of the court to give the instruction.

■■ Relator's final contention is that the verdict is grossly excessive. It argues that only eight and two-thirds acres are involved in the entire easement and the verdict "equals $488 per easement acre," whereas the value of the farm at the time of the appropriation, according to the landowner, was only $250 per acre. This argument does not take into account the settled rule that in condemnation proceedings the measure of damages is the difference between what was the fair market value of the

*whole tract* before and its fair market value after the appropriation, and every witness in this case testified that the line damaged the entire farm. Defendants' expert witnesses fixed the damages at approximately $6,000. Relator's witnesses fixed them at $1,250 to $1,500. It was clearly within the province of the jury to weigh this conflicting evidence and draw its own conclusions therefrom. We cannot say that the verdict was excessive.

The judgment is affirmed. All concur.