UNION ELECTRIC COMPANY, a Corporation, Plaintiff-Appellant.

v.

Sidney S. LEVIN et al., Defendants, Annie Tomschin et al., Defendants-Exceptors, Respondents.

No. 29712.

St. Louis Court of Appeals.

Missouri.

July 2, 1957.

Motion to Revise or Modify and Motions for Rehearing or for Transfer to Supreme Court Denied Aug. 28, 1957.

David LaDriere, Clayton, William H. Ferrell and Keefe, Doerner, Schlafly & Griesedieck, St. Louis, for appellant.

Brevator J. Creech, Troy, B. Richards Creech, St. Charles, for Annie Tomschin et al.

Edward L. Sprague, Clayton, guardian ad litem for Pauline Kraus Schoettler.

DEW, Special Commissioner.

Appellant brought this action to acquire by condemnation a certain easement on a tract of land of which the respondents own an undivided four-sevenths interest. The award to respondents by the Commissioners appointed by the Court was $300. Respondents filed exceptions to that report and upon a jury trial thereof in the Circuit Court, the verdict and judgment were in respondents' favor in the amount of $5,000. From that judgment this appeal was taken.

According to the petition filed in this cause August 23, 1954, the appellant is a corporation organized and existing under the laws of Missouri for the purposes of manufacture, distribution and transmission of electric current for light, heat and power for public use and is so engaged pursuant to that authority; that it is necessary in order to render such service, to secure a perpetual right and easement as provided by law "on eight strips of land, each 30 feet in width, on which to locate and erect one single pole line conveying a 34.5 KV Circuit, together with the right, permission and authority" of the plaintiff, its successors and assigns, "to place, erect, keep, maintain, inspect, add to the number of and relocate at will, poles, guys, anchors, cross-arms or fixtures and appurtenances, and to string wires, across, through, under or over the premises condemned, owned by the defendants herein", for the purposes stated, with the rights of ingress and egress, of patrol, repairs, "and for doing anything necessary or convenient for the enjoyment of the easement herein granted", and the privilege of removing at any time "any or all of the improvements erected upon, over, under or on said land".

The petition alleged that for the purposes stated it is necessary for plaintiff to secure such a right-of-way over a strip 30 feet in width in the fifty acre tract of land in St. Louis County, Missouri, belonging to the respondents, described as Lot 2 of the Subdivision of Lands of Samuel Conway, according to the recorded plat thereof; that the proposed strip would lie 15 feet on each side of a line running along the center of a perpetual easement over said land previously granted to the plaintiff's predeces-

sor, the Union Electric Light and Power Company, which previous easement was for the purpose of erecting and maintaining two electric transmission lines, each 62.5 feet from the center line of that right-of-way. It was further averred that the appellant herein had been unable to agree with the respondents upon proper compensation for the easement presently sought. The prayer was for a decree of condemnation and for the appointment of Commissioners to ascertain the damages, and just compensation to which the respondents would be entitled.

At the beginning of the trial June 6, 1956, it was agreed that the proposed easement was 30 feet wide, 1380 feet long, and that the award of the Commissioners of $300 had been paid by the appellant into court on December 14, 1954.

According to the evidence, the tract in question is in St. Louis County, Missouri, and was used for farming purposes. It contained approximately 50 acres and was oblong in shape, running north and south, except that the southern boundary and lower one-third of the east boundary consisted of a meandering creek, running northeasterly and southwesterly. This tract had been previously bisected by the present U. S. Highway 40, which was about 30 feet in width, and which ran easterly and westerly across the tract, leaving about 15 acres south of the highway and about 35 north of it. Also traversing the entire tract northeasterly and southwesterly, and criss-crossing the said highway near the lower center of the tract, was a 125 foot perpetual easement previously granted by respondents in 1931 to the predecessors of appellant, for the purpose of and actually being used for the erection and maintenance of two "H-Frame" electric transmission lines for power, light, heat and signal purposes, each line to be and in fact was 62.5 feet from the center line of said easement. Said prior easement of 1931 included the right and privilege of the grantee to enter upon such right-of-way and adjoining premises for the purpose of erecting the H-Frame Structures, cross-arms, wires, cables, anchors, guys and appliances thereto belonging, operating, repairing, maintaining the same, the right to trim, cut or remove trees, bushes, saplings or other obstructions, if any, on the right-of-way, and adjoining premises as may interfere with the operation and maintenance of said lines, the grantors agreeing not to interfere with the successful operation and maintenance of said line or lines for any of the purposes aforesaid. The grantee therein further agreed to pay the grantors any damages to the land due to the construction, operation and maintenance of the transmission lines.

The evidence further showed that under the previous easement of 1931, the grantee had then erected and has since maintained within the boundaries of respondents' farm, two transmission lines 62.5 feet apart, as described, strung on three H-Frame Structures of two poles each on the north line of the easement and three likewise on the south line thereof. An H-Frame Structure was defined as consisting of "Two wood or metal poles set opposite each other and at equal distance from the center line of the transmission line with cross-arms, etc., affixed near the tops of the poles".

There was a one and a half story house, a barn and outbuildings near the northwest corner of the tract, facing Conway Road, the north boundary of the respondents' land, but they were 900 or 1000 feet from the nearest point in the easement. The land sloped upward from the transmission line to Conway Road and downward toward the south. Because of the location and intersection of Highway 40, and the easement of 1931, the lower 15 acres or thereabouts were cut up into three irregular portions, one very small in area, but all were being used for agricultural purposes. During the trial, the Court in the present proceedings permitted the jury to view the property.

Such, substantially, according to the proof, were the conditions at the date of the present condemnation, under which a single line of four wooden poles were erected on respondents' land along the center line of the former easement, and set about 300 feet apart, each carrying a cross-arm 16 feet long on which were strung two transmission wires. It is for the additional damage to respondents' land by the rights acquired for the single transmission line down the center of the previous easement that respondents are here seeking recovery.

Further detail of the voluminous evidence would serve no essential purpose because of the view we take of appellant's first point of error. Immediately after the jury was empanelled and sworn, appellant's counsel asked leave of the Court to amend the petition by striking out the words "across, through, under or", referring to the placing of the wires on the premises condemned, and to strike also the words "and for doing anything necessary or convenient for the enjoyment of the easement herein granted".

Counsel for respondents vigorously objected, urging that the amendment was too late, that appellant had paid the amount of the Commissioners' award, had taken possession of the easement, and had constructed its line thereon; that the amendment would change the cause of action; that the decree of condemnation was a final judgment upon payment of the award, and the easement had been fully acquired under the petition. It was urged that the only issue pending was the damages for the taking of the property.

Counsel for appellant denied that the proposed amendment made any change in the substance of the petition; asserted that there was no final judgment in the condemnation suit until after the trial by jury, a verdict, a judgment and a ruling upon the final motions thereon; that the purpose of the request for leave to amend was to clear up any misunderstanding that appellant was stringing wires underground on defendants' premises, which was not its intention, purpose or desire.

Respondents' counsel further suggested that respondents could not appeal from the decree granting the easement; that the property was already taken and being used by the appellant.

The Court stated that the words "across, through, under or", provided for a broader easement whether appellant used it or not, and that the Commissioners' report necessarily included it; that any such change now would be prejudicial; that aside from the statement of counsel for appellant that such right would not be used, the fact is that the Commissioners' report included it.

Appellant's counsel explained that by the amendment the appellant would be asking for less than it did in the original petition and not more, and that the landowners would be damaged less by such reduction of rights and privileges condemned. However, the Court denied the request for leave to amend the petition, as quoted.

■■ The substance of a cause of action for condemnation and the limits of the rights to be acquired thereby over the defendants' property are fixed by the petition. Rights and privileges not specifically included in but incidental to those mentioned in the petition are deemed to be granted, and are to be considered in the fixing of damages therefor. It is presumed that the appropriator will exercise his rights to the full extent. State ex rel. State Highway Commission v. Johnson, Mo.Sup., 287 S.W. 2d 835, 839. Mere promises of intention not to use a right or a privilege specified or reasonably implied are not sufficient to exclude the consideration thereof in the assessment of damages. City of St. Louis v. Senter Commission Co., 336 Mo. 1209, 84 S.W.2d 133; 29 C.J.S. Eminent Domain § 265, p. 1236; 18 Am.Jur. p. 971, Section 327.

■ The proposed amendment in the instant case cannot be said to be such as

would change the substance or character of the petition. The effect of the amendment would be to authorize the appellant "to string wires over the premises sought to be condemned", instead of "across, through, under or over" as originally pleaded in the petition. It cannot reasonably be contended that a specified right of easement acquired to string a line of electric transmission wires "over" a person's land would impliedly include the right to place such wires underground. Therefore, the proposed amendment would clearly have had the effect of materially reducing and further limiting the rights or privileges of appellant as to the placing of the transmission lines on respondents' land. The further words which appellant asked to delete by amendment, authorizing it to "do anything necessary or convenient for the enjoyment of the easement herein granted", would conflict with the proposed amendment, which would not authorize appellant to place the transmission lines underground.

■ The respondents in their brief take inconsistent views of the effect of the proposed amendment. While objecting to the amendment, they assert that even if it were allowed, the petition would remain the same and would still entitle the appellant "to string wires across, through, and under, and do all things necessary for the enjoyment of the easement". They also point to a clause remaining in the petition and not included in the amendment proposed, giving appellant "the privilege of removing at any time any or all of said improvements erected upon, over, under or on said lands", etc. They contend that the proposed amendment was made for the sole purpose of reducing the damages and confusing the jury; that appellant could still change the number of poles, move them and do anything necessary to the full enjoyment of the easement; that "the amendment would not have reduced its rights"; that appellant would not and could not give up any part of the 30 foot easement or rights therein. But whether the effect of the amendment would be to reduce or limit substantially the rights of condemner is an issue of law which we have already determined in the affirmative hereinabove. The words quoted that would remain in the petition after the proposed amendment, if made, relative to "removing improvements erected upon, over, under or on said lands", would not infer authority to install and maintain the electric transmission lines underground on respondents' farm, but would reasonably be held to refer only to parts of the poles, anchors, guy wires or other similar equipment that might be under or partially under the surface of the ground in connection with the construction and maintenance of the overhead transmission line.

The question remains, however, whether amendment of a petition should be allowed in a proceeding for condemnation whereby the rights or privileges sought by the condemner are reduced and limited, and after judgment granting the condemnation has been rendered, the award of the Commissioners has been paid by the condemner, and possession and use of the easement have taken place; and if so, how and when. In respondents' Instruction No. 1, the Court told the jury, among other things, that the easement included the right to "string wires across, through, under and over the premises condemned". We are of the opinion that if it was error for the Court in the case at bar to deny the appellant leave to materially reduce the easement rights originally sought by its petition and to be submitted to the jury, thereby minimizing the damages, then it was a prejudicial error, requiring a reversal and a remanding of the cause irrespective of the other points of error presented.

It must be recalled that while appellant did take possession of the easement to the extent that it did erect and is maintaining wires over the respondents' land, it has not as yet, according to the evidence, availed itself of any right which respondents contend appellant had, and which, if so, appellant desired to forego by amendment, to

erect or maintain transmission wires *underground* on respondents' land.

The question at hand was exhaustively discussed and, we believe, positively settled so far as the instant case and and the law of Missouri are concerned in St. Louis, K. & N. W. Ry. Co. v. Clark, 121 Mo. 169, 25 S.W. 192 and on Rehearing, 25 S.W. 906, 908, 26 L.R.A. 751. In that case the condemner, a railroad, after condemnation, paid into Court the award of the Commissioners for the damages incurred by the defendants by the right-of-way and appropriated the land condemned. At the trial the condemner offered into the record a stipulation to construct and maintain two crossings for the use of the landowners, not required by the petition or the statutes. The Supreme Court pointed out that the governing statutes of this state are so incomplete that much must be left to principles of equity. It stated that the statutes do not require the condemner to announce to the Commissioners the plans of construction and, therefore, he should be allowed to do so at the trial before a jury, "with a view of obtaining a reduction of damages". The Court said at 25 S.W. 908: "Our opinion is, therefore, that the offer made by the railroad company in this case, upon the trial, to so construct its road as to reserve to the landowner two crossings was a matter going to the damage to be allowed, though incidentally the reservation may have limited to a certain extent the use of the easement. Such an offer should be treated as in the nature of an amendment to the petition, entitling the defendants to postponement of the trial if they were taken by surprise". In the main opinion in that case the Court said (25 S.W. at page 198): "The company had the undoubted right to elect, as it did, to take a strip 50 feet instead of 100 feet in width; and, if it sees fit to reserve two open crossings for the defendant's use, we can see no reason why the reservation may not be made, and the damages then assessed on the basis that defendant retains that interest in the land. The statute very justly and properly places

restrictions upon the exercise of eminent domain, but it does not follow by any correct reasoning that the condemning company is bound, in all cases, to go to the full extent of the law".

That the proper time and method of reducing the rights sought in a condemnation suit by the condemner would be at the trial of the issue of damages before a jury, and by way of amendment to the petition, was held in Shell Pipe Line Corporation v. Woolfolk, 331 Mo. 410, 53 S.W.2d 917, 918, wherein the Court said that the condemner may appropriate less than the full rights available under the law, and if he does, that fact is a proper element to consider on the issue of damages; that his purpose to exercise less than his full rights should appear with a reasonable certainty "in the petition or be brought in the way of amendment thereto". In that case the condemner sought to establish a reduction of the appropriation by mere proof that the condemner did not and would not fence in rights-of-way. This the Court held was not sufficient, but such reduced easement should have been by way of amendment to the petition. Cases cited based on oral promises to limit the rights and privileges specifically pleaded are to be distinguished from the instant case.

■ If it be considered that under the present Code of Civil Procedure, the allowance of the amendment in question, after the statutory periods specified have expired was a matter of discretion for the Court under Section 509.490 RSMo 1949, V.A. M.S., it will be noted that the same section provides that such leave should be freely given when justice so requires. If, however, under the facts in this case and under the law, it was a matter existing solely in the sound discretion of the trial court to allow or deny the condemner the right to reduce and minimize the damages to respondents' land, the denial of leave to the condemner so to do, by the amendment, thereby enforcing the payment for privileges which the condemner no longer seeks

or desires, was, in our opinion, an abuse of discretion and prejudicial error.

In view of the foregoing and the necessity of a retrial of this cause, it would be of no avail to review the appellant's claim of excess damages, nor the instruction complained of, based on an erroneous scope of the easement.

■ Appellant further contends that the Court erred in permitting witness Meier to testify concerning depreciation in value of the property, due to the 30 foot easement. Meier testified that he lived and had owned property near the respondents' tract, and had been familiar with the land in question for about 70 years. He said he had sold a tract of similar land in the vicinity in 1953. On direct examination he was asked, without objection, to give his opinion of the reasonable value of respondents' land before the present easement, to which he answered: "In my opinion I figure around $2,000 an acre". He then was asked, considering the present easement which was outlined to him by counsel, what, in his opinion, was the reasonable market value of the respondents' land after that easement, to which appellant's counsel's only objection was that the witness was not qualified as an expert, but appellant's counsel continued: "I think he can tell Your Honor what he thinks the land was worth before they ran the easement, and what it was worth after, in his opinion". The Court ruled that such was the question asked. Later, counsel for appellant explained that he meant the witness was not qualified as an expert to appraise the value of the rights under the easement or "what value the remaining land has after these rights are taken. I think it is a legal question". The Court again overruled the objection. We think that in view of the record, the Court committed no error in refusing to exclude the witness' answer of "$1000 an acre".

If it was not made plain in direct examination of Meier that he should allow for the conditions already caused by the previous easement in appraising the value of the land at the time of the taking of the present easement, neither was it clearly brought out by appellant's counsel in the cross-examination. Witness explained his justification for his valuation by saying: "The wires and stuff you have put in front there in the ground". He could not tell how many poles or wires were installed on the tract. Upon retrial it can be clearly shown that the conditions that existed on the date of the present easement included those resulting from the prior and existing easement of 1931.

■ The appellant's remaining point is that the Court erroneously admitted evidence of the values of other property not comparable to the land in question, and of sale prices based on hearsay. Appellant failed to designate the instances complained of, leaving it to this Court to search the record for them in order to determine the point raised. It is not the function of the Appellate Court to ascertain what particular questions and answers may be classified under such general objections. Supreme Court Rule 1.08, 42 V.A.M.S.; Ambrose v. M. F. A. Co-op. Ass'n of St. Elizabeth, Mo.Sup., 266 S.W.2d 647. However, the appellant does mention one transaction in which the witness said that as agent in a transaction he knew the sale price of another tract of land. His knowledge, thus acquired, of the sale price was not hearsay and was properly admitted.

For the reasons stated, the judgment should be reversed and the cause remanded. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DEW, Special Commissioner, is adopted as the opinion of the Court. The judgment is accordingly reversed and the cause remanded.

RUDDY, P. J., and MATTHES and ANDERSON, JJ., concur.