STATE of Missouri ex rel. Clifford MORTON and Lulabelle Morton, Relators,

v.

Honorable Emery W. ALLISON, Judge of the 25th Judicial Circuit of Missouri, Respondent.

No. 8068.

Springfield Court of Appeals.

Missouri.

May 2, 1962.

Motion for Rehearing or, in Alternative, to Transfer to Supreme Court Overruled June 5, 1962.

Weldon W. Moore, Rolla, for relators.

Robert L. Hyder, Bruce A. Ring, Jefferson City, for respondent.

RUARK, Presiding Judge.

In this prohibition case we are confronted with the unwelcome task of attempting to interpret an engineer's description and to construe and apply Supreme Court Rule 86.06, V.A.M.R., in respect to the reinstitution of condemnation proceedings.

On April 3, 1961, the state highway commission filed its petition in condemnation against owners involved in its proposed plan for the construction of some 7.124 miles of highway (designated as Route 63) in Texas County. In that case (No. 7384) relators' land was involved and they were made parties. Commissioners were appointed and they filed their report assessing the damages about May 9. About May 15, 1961, the highway commission filed its written abandonment in accordance with Section 523.040 RSMo 1959, V.A.M.S., and Rule 86.06. Thereafter, on August 10, 1961, the commission filed a new suit (No. 7432) setting forth the lands of relators to be taken by a dif-

ferent description. On August 18, 1961, relators filed motion to dismiss Case No. 7432 on the ground that the lands and abutters' rights of access involved in that case were a part of the land condemned and then abandoned in previous Case No. 7384, and that this was in violation of Rule 86.06, which provides, among other things, that if the condemnor abandons the appropriation as to any property, proceedings for condemnation of the same property shall not be instituted again within two years thereafter. The circuit judge overruled said motion and indicated he would appoint commissioners. We issued our preliminary writ and the case is here on the return of the respondent with such facts only as are conceded in the pleadings and the briefs of the parties.

The description of the land and rights sought to be taken in the abandoned proceeding is as follows:

"18.11. All that part of the Clifford Morton tract lying in the S–½ SW–¼ Sec. 5, T 30 N, R 9 W, which is included in a parcel lying northwesterly of Route 63, Texas County, and southerly of main street of Houston, Missouri, and easterly of a line extending southerly from 35 feet and opposite Station 1+50 which is a point 350 feet north of and 14 feet west of the southeast corner of the SW–¼ SW–¼ Sec. 5, of the side road connection on main street, Houston, Missouri, to 70 feet opposite Station 1086+80; thence southwesterly 70 feet opposite Station 1087+12.55 of Route 63, Texas County, which is a point 193 feet north of and 47 feet east of the southwest corner of the SE–¼ SW–¼ Sec. 5.

"18.20. Also, all abutters' right of direct access between the highway, now known as U. S. Route 63, Texas County and Grantors' abutting land in the S–½ SW–¼ Sec. 5 T 30 N, R 9 W, extending from Station 1+50 of said side road connection of main street

to opposite Station 1087+12.55 of said Route 63, Texas County."

The description in the present suit is:

"9.11. All that part of Grantors' tract lying in the S–½ SW–¼ Sec. 5, T 30 N, R 9 W, which is included in a parcel 70 feet wide lying northwesterly of and adjoining the surveyed centerline of said Route 63, Texas County, and extending from Station 1086+00 of said centerline to Station 1087+12.55. Said centerline is described as follows: Station 1086+00 is a point 341 feet north of and 117 feet east of the southeast corner of the SW–¼ SW–¼ of said Sec. 5, from which point and from a tangent bearing South 39° 00′ 28.4″ West said centerline deflects left on a spiral for a 6° curve, 112.55 feet to Station 1087+12.55 which is a point 251 feet north of and 47 feet east of said southeast corner, excepting therefrom that portion previously acquired.

"9.20. Also, all abutters' right of direct access between the highway, now known as U. S. Route 63, and Grantors' abutting land in the S–½ SW–¼ Sec. 5, T 30 N, R 9 W, from opposite Station 1086+00 to opposite Station 1087+12.55 on the right."

The first question is, *was the description in Case 7384 so vague and incomplete as to be a complete nullity?* If so, as the highway commission contends it was, then that proceeding was void and can be disregarded. Sassman v. State Highway Commission, Mo.App., 45 S.W.2d 1093, 1095. Or was it, as is the contention of the owners, a description, however defective, from which the land could be located?

■ There is no question that the description in the first petition is not a *good* one. We think the statute and the rule contemplate that the condemnor shall describe the land and rights sought with

such particularity that the owner can, without too much difficulty, *ascertain exactly what is being taken*. Law of Eminent Domain, Jahr, § 225, p. 345; 18 Am.Jur., Eminent Domain, § 325, p. 969; 29 C.J.S. Eminent Domain § 259a, p. 1228; State ex rel. N. W. Electric Cooperative, Inc. v. Waggoner, Mo.App., 319 S.W.2d 930, 934; see Missouri Pac. Ry. Co. v. Carter, 85 Mo. 448, 451. He should not be compelled to employ a surveyor to go upon the land and run a survey simply in order to learn what it is the state takes by sovereign right. A description which relies upon highway stations alone, although, in most instances, intelligible to a qualified surveyor with the highway plans in his hands, is incomprehensible to the average man, and too often to his attorney, and such has been the source of not infrequent complaint. We think it is not asking too much to say that the owner's lands should be described by metes and bounds referenced to congressional section corners, recorded plat, or fixed and readily ascertainable monuments. And we think the description in Case No. 7384 was subject to motion by the owner. But in this instance the owners are not complaining. It is the creator of the description which now attacks it.

Filed with the petition, adopted by reference, and made a part of the petition is the detail plan of the improvement, which, the petition states, shows "the location of said highway through the lands herein affected and the particular parcels of land sought to be acquired" from the owners. The petition further states that such detail plans are intended to describe the parcels of land; and, finally, reference is made to such plans for a more accurate and perfect description of said parcels and rights sought to be taken.[1] Reference for the same purpose is made to "the surveyor's stakes heretofore driven along the line of said highway."

Referring now to "stations," these are, as we understand, points on a center survey line. The commencing point is 00. Thereafter a survey station is established each 100 feet and given a progressive number. Thus Station 1/50 would be 150 feet from the beginning point.[2] Normally, if there be no immediate reference point, an owner's surveyor might have to survey back to the beginning point of the project survey to locate a particularly designated station.

By referring to the plat or plans incorporated in the petition, we learn that the land involved lies adjacent to the intersection of "present Rte. 63 to be obliterated" and the main street of Houston, Missouri. The route of the new or projected improvement comes in from the north and virtually rejoins "present" 63 at this intersection. The plans show a garage adjacent to this (almost) three-way intersection.

It will be noted that the part of the Morton tract to be taken lies in the south half of the southwest quarter, Section 5, Township 30, Range 9; that it lies northwest of Route 63 and south of the main street. Thus north and easterly barriers are fixed by these two roads. Highway says that the southeast corner of the southwest quarter of the southwest quarter is *not* located 350 feet north and 14 feet west of Station 1/50 as referred to in the first description. This we think (from a comparison of the surveys in Cases 7384 and 7432) is probable. But in this case we *can* locate Station 1/50 as a fixed position. The plans show the center of the intersection of Main Street and the highway to be 0/00 Main Street and 1085/45 highway. From there we can reach the point Station 1/50. A fixed location by monument would pre-

---

1. See State ex rel. Siegel v. Grimm, 314 Mo. 242, 284 S.W. 490, 495.

2. Waller v. City of Macon, Mo.App., 277 S.W.2d 886, 888; The Principles and Practice of Surveying, Breed and Hosmer, vol. I, p. 183.

vail over courses and distances.[3] Highway says that we cannot locate the point of beginning at 35 feet from such station because we would not know what direction to go. Although we do not recommend the use of the word in descriptions purporting to advise a landowner what land of his is being taken, we think that *opposite* means, in engineering language, *perpendicular to* a survey line. Webster's New International Dictionary, 2nd ed., says that "with respect to a given line two points are *opposite* when their connecting line would cross it at right angles." Since Main Street is shown to run in an east-west direction, and since the land lies south of Main Street, and since the future course of the boundary line is directed to run to the south, there could be only one direction the "opposite" point could be, viz., to the south. Otherwise the survey line would run out into or across Main Street and then retrace its steps.

■ We can determine the location of Station 1086+80 and Station 1087+12.55 by reference to the fixed point 1085/45 in the center of the highway. We thus complete the west line, which encloses an area bounded on two sides by the highway and Main Street, and so arrive at a somewhat triangular-shaped figure representing the land to be taken. Hence, although the description in Suit 7384 is not to be recommended, we are of the opinion that it vested the court with jurisdiction and did not render the proceedings void. State ex rel. State Highway Commission v. Moore, 322 Mo. 329, 18 S.W.2d 892; Chicago, S. F. & C. Ry. Co. v. Swan, 120 Mo. 30, 25 S.W. 534; Mississippi County v. Byrd, 319 Mo. 697, 4 S.W.2d 810; City of St. Louis v. Waterman, 277 Mo. 221, 209 S.W. 905.

There seems to be little question that the description contained in the first case did not contain the actual land which Highway needed for completion of its project. This, as it appears, was probably due to a mistake in locating the section corner, or in chaining therefrom. The description in the new case would be, if we are able to draw it, a longer but much more narrow strip of ground. It involves less area than the first description. *Most* of the land to be taken thereby is not included in the first suit, but a small area is common to both descriptions. This common area is not great in proportion to either of the two descriptions, but since the property appears to be that adjacent to a garage we do not know as to its relative importance.

*Could the petition have been amended?* The parties have spent much time and argument on this question, the view being that it is pertinent to the construction and application of Rule 86.06. For if, as Highway contends—and there seems to be no question—the first description was by error, and if the error could have been reached by amendment, then there was no need to abandon and start anew, for such procedure makes more delay and expense to the owner and therefore more likelihood of falling within the reason for Rule 86.06.

The right to amend depends upon the circumstances, including the stage of the proceedings. It is said that the practice of allowing amendments is one which should find favor with the courts, since it saves time and expense to both the public and the parties.[4]

■ It seems to be well settled that the condemnor may, after the report of commissioners is filed, abandon one of two separate tracts and proceed as to the oth-

3. Johnson v. Buffalo School Dist. No. 1, 360 Mo. 962, 231 S.W.2d 693, 696; City of Marshfield v. Haggard, Mo.App., 304 S.W.2d 672, 678; Law of Surveying and Boundaries, 3rd ed., Clark, § 540, p. 535, § 683, p. 832.

4. Law of Eminent Domain, 3rd ed., Lewis, § 561(361); Law of Eminent Domain, Jahr, § 235, p. 353; 18 Am.Jur., Eminent Domain, § 327, p. 971; 29 C.J.S. Eminent Domain § 265, p. 1236; see City of St. Louis v. Waterman, 277 Mo. 221, 209 S.W. 905, 908.

er,[5] or *reduce* the amount of property taken,[6] or amend so as to reduce the damage or injury inflicted.[7] In at least one case an amendment (as a change of plan of the general improvement) was considered proper which made a small increase (eight inches) in the amount of land taken from some property owners and therefore was not substantial.[8] But the general weight of authority seems to be that amendment cannot be made to take in different and additional lands after assessment if it substantially affects the owner's rights.[9] In State ex rel. State Highway Commission v. Wright, Mo., 312 S.W.2d 70, 74, the court was careful to point out that "it is also important that by the amendment the condemnor did not seek to appropriate more land or easements than originally planned."

■ One of the difficulties in respect to amendment so as to take in different or additional land, even to correct a mistake, is in the mechanics, that of having had the commissioners' report. It would seem to the writer that it would be more practically effective and would incur less expense and inconvenience to both the owner and the public, if the condemnor satisfied the trial court that the original description was a result of inadvertence, to allow an amendment to change the description, set aside the report of commissioners, and have the commissioners reconvened to assess the property actually intended. However, as to such reassessment, we are met with our own decision in State ex rel. State Highway Commission v. McDowell, 236 Mo. App. 304, 152 S.W.2d 223. We think that the second description reflects a substan-

tial change in the taking and takes in (comparatively) a large proportion of defendants' property not included in the first. For that reason we believe that, under the existing law, the condemnor could not have safely amended after the report of commissioners had been filed.

This brings us to the final question: *Does the Supreme Court Rule 86.06 prohibit the bringing of the present action within two years?*

■ The statutes of the state in reference to condemnation are so incomplete that it has become necessary for the courts to fill in the gaps by applying general principles of equity and right.[10] And by Rule 86.06 we think the Supreme Court has attempted to supply, as far as it may by procedural method, what the legislature has partially failed to do.

It has been held that a restriction against reinstitution after abandonment does not apply where there is a substantial change in the project or plan for the public improvement as such. City of St. Louis v. Franklin Bank, 351 Mo. 688, 173 S.W.2d 837, 847; see discussion in Center School Dist. No. 58 of Jackson County v. Kenton, Mo., 345 S.W.2d 120, particularly as to the Rogers case, at 1. c. 128. It is not shown, however, that the change in the land as to this particular owner amounted to a real change in the plan or project for the improvement as a whole. Rather it was a correction in description as to amount and location of the land and rights to be taken at a particular location on the project in order to accommodate the general plan.

5. State ex rel. State Highway Commission v. Deutschman, 346 Mo. 755, 142 S.W.2d 1025.

6. Union Electric Co. v. Levin, Mo.App., 304 S.W.2d 478, 483.

7. State ex rel. State Highway Commission v. Wright, Mo., 312 S.W.2d 70; St. Louis, K. & N. W. Ry. Co. v. Clark, 121 Mo. 169, 25 S.W. 192, 906, 26 L.R.A. 751.

8. City of St. Louis v. Senter Commission Co., 336 Mo. 1209, 84 S.W.2d 133.

9. The Law of Eminent Domain, 3rd ed., Nichols, vol. 6, § 26.21, pp. 166–168; see Law of Eminent Domain, Jahr, § 225, p. 346; 29 C.J.S. Eminent Domain § 265, p. 1236, note 73; Leavenworth Terminal Railway & Bridge Co. v. Atchison, 137 Mo. 218, 37 S.W. 913, 915.

10. St. Louis, K. & N. W. Ry. Co. v. Clark, 121 Mo. 169, 25 S.W. 192, 906, 908, 26 L.R.A. 751; Union Electric Co. v. Levin, Mo.App., 304 S.W.2d 478, 483.

The new condemnation was not based upon a new project improvement.

The provision in the rule is the projection of thought expressed in Rogers v. City of St. Charles, 3 Mo.App. 41, 46:

> "We cannot perceive what possible advantage can arise from the constitutional declaration that private property shall not be taken for public use without just compensation, if the State or any of its deputies, exercising the right of eminent domain, may cause as many inquests as it pleases of the value of the property to be condemned, and set aside as many of them as it sees fit, until one is found sufficiently small to suit its notions of a just compensation, and then to declare it to be so."

Running through many of the decisions is the thread of thought that the sovereign may not use the extraordinary power of eminent domain so as to unnecessarily harass its citizens. It can well be argued that the citizens can be harassed just as woefully by the mistakes or incompetence of the sovereign's delegates, as by design; but the needs of the public must be balanced against the rights of the individual owner; and even in the Rogers case (l. c. 47) the element of good faith is mentioned.

In Center School Dist. No. 58 of Jackson County v. Kenton, supra, 345 S.W.2d 120, 128, the court in discussing Rule 86.06 makes note of the fact that it tends to free defendants from likelihood of vexatious litigation by virtue of want of good faith.

In construction of statutes the object sought to be accomplished and the evil sought to be remedied should be considered.[11] It would seem that the same rule should apply to the rules of the Supreme Court when they confront a Court of Appeals. And it would seem that the object sought to be accomplished by that portion of Rule 86.06 was to furnish some measure of protection against the unnecessary harassment of an owner by irresponsible, vindictive, or ultra-bargain-seeking officials; but that its purpose was not to prevent the reinstitution where there has been a good-faith mistake or inadvertence resulting in the misdescription of a particular tract, for lack of which an extensive public improvement might be prevented or delayed. Nevertheless, the language of the rule is explicit and we have no right to change it by construction.

Accordingly the preliminary writ is made absolute.

McDOWELL and STONE, JJ., concur.

---

11. State ex rel. M. J. Gorzik Corp. v. Mosman, Mo., 315 S.W.2d 209, 211; In re Tompkins' Estate, Mo., 341 S.W.2d 866, 872; State v. Tustin, Mo.App., 322 S.W. 2d 179, 182, footnote 9; see State ex Gerber v. Mayfield, 365 Mo. 255, 281 S.W. 2d 295, 297.