STATE of Missouri, at the relation of STATE HIGHWAY COMMISSION of Missouri, Plaintiff-Appellant,

v.

Mabel Taylor STOTKO et al., Defendants,

James B. McHugh, John C. McHugh, William O. McHugh, Ann McHugh, Joseph D. McHugh, Helene McHugh, Kenneth D. Kruel, Trustee, and Bank of Washington, a Corporation, Defendants-Respondents.

No. 31153.

St. Louis Court of Appeals.

Missouri.

Feb. 19, 1963.

Robert L. Hyder, Melvin Englehart, Jefferson City, for appellant.

Frank W. Jenny, James A. Cole, Jenny & Cole, Union, T. P. Hukriede, Washington, for respondents.

BRADY, Commissioner.

This is an appeal from a judgment entered in the Circuit Court of Franklin County, Missouri, based on a jury verdict

in the amount of $22,881.83 in a condemnation proceeding. The highest amount the appellant conceded respondents were entitled to as damages was $10,500.00. The amount in dispute is $12,381.83 and this court has jurisdiction. State ex rel. Burcham et al. v. Drainage District No. 25 et al., Mo., 271 S.W.2d 525.

The appellant's first and main allegation of prejudicial error is that the trial court refused to permit the appellant to amend its petition. Since the decision herein is upon this allegation of error, it will be unnecessary to state the other two allegations of error briefed by the appellant or to recite the factual situation with respect to those contentions except to say that one of those allegations is without basis in the motion for new trial.

The respondents owned a subdivision on some 85 acres which had been platted and the larger portion of it divided into lots. The 10.68 acres which is the subject of this proceeding cut in an eastwardly-westwardly direction across the south end of this subdivision, taking certain lots and cutting off the south 12 acres from the rest of the subdivision which would, upon completion of the highway, lay north of the highway. The water system for this subdivision was in that portion of the subdivision lying north of the roadway with the well which furnished the water for the subdivision lying about 300 feet north of the north line of the condemned strip of 10.68 acres. There was only one lot laid out in this 12-acre portion at the time condemnation took place. Unless the respondents could put water lines under the roadway and extending from the well to the 12-acre tract, that tract could not be given water from this well.

The petition seeking to condemn this 10.68 acres for right-of-way for the construction of Interstate Highway No. 44 was filed on December 30, 1959, and the theory upon which this case was tried was that, as filed, it would have prevented the respondents from constructing these water lines under the right-of-way. Commissioners were appointed and filed their report on March 4, 1960, and exceptions to their report were filed on March 11, 1960. On July 5, 1960, the appellant filed its motion to amend the petition. That offered amendment was as follows:

*"MOTION BY PLAINTIFF REQUESTING LEAVE TO AMEND PETITION*

"Comes now the Plaintiff and moves the court to grant Plaintiff leave of court to amend the petition filed herein, by adding paragraph 13.20 to page 11 of said petition, which paragraph is as follows:

"The Plaintiff hereby agrees and does hereby reserve unto the Defendants, James B. McHugh, John C. McHugh, William O. McHugh, Ann McHugh, Joseph D. McHugh, Helene McHugh and Kenneth D. Kruel, Trustee, Bank of Washington, a corporation, the right, privilege and permission to install and maintain two water mains not less than four inches in diameter across the right-of-way described in paragraphs 13.10 and 13.11 of the petition herein, and subject to the regulations of the Plaintiff as set forth and contained in 'A Policy on Location of Utility Facilities on State Highways', a copy of which is hereto attached and marked Exhibit 'A'."

Exhibit A is reproduced in the transcript beginning on page 16 and ending on page 26 thereof. This policy statement includes "Interstate system, or projects having interstate standards", "High Type Roads", and "Low Type Roads". It is to be noted that the offered amendment does not specify the particular type road involved but, as the respondents state in their brief, the petition alleges that this route had been approved by the Federal authorities and the only fair inference is that the provisions of Exhibit A referring to the interstate system or those having interstate standards would

apply in this case. Subsection B, paragraph 2 of those specifications reads as follows:

"2. All underground facilities crossing the main roadways shall be encased between the outer shoulder lines of the two main roadways as a minimum, and shall be installed and maintained without cutting or damaging the roadway surfacing or entering or leaving the main roadways for maintenance operations."

On July 26, 1960, the trial court heard evidence offered by the respondents on the motion to amend. This evidence was directed to whether or not George A. Detchemendy, right-of-way agent for the appellant, and one Mauer, district right-of-way supervisor, were present with the court-appointed commissioners when Mauer informed the commissioners that they were to appraise the property in the light that the respondents would not have the right to run water pipes across the condemned strip. Mauer also testified that he never told the commissioners that water could be put under the highway. Objection was vigorously made by the appellant to the above testimony of Detchemendy and Mauer. Counsel for the appellant then testified that he had informed counsel for the respondents on June 9th that if his clients would apply for a permit to install these water lines, it would be granted subject to the regulations above set out. This was disputed by respondents who objected to such testimony. The motion was taken under advisement and overruled by the trial court on October 4, 1960. The evidence stated above was the only evidence offered upon the motion. The trial began on January 20, 1961. The appeal in this case was first taken to the Supreme Court of this state and the case was transferred to this court. By stipulation of counsel, this case was continued on our docket and heard during our October, 1962 docket.

With respect to the appellant's allegation of error regarding the trial court's action in refusing it permission to amend, the law in this state is that the condemning party may appropriate less than the full rights available under the statute, and the fact that the use is so limited is a proper matter for consideration in fixing the amount of damages to be allowed. St. Louis K. & N. W. Ry. Co. v. Clark, 121 Mo. 169, 25 S.W. 192, 26 L.R.A. 751, on rehearing, 25 S.W. 906. See also Union Electric Co. v. Levin, Mo.App., 304 S.W.2d 478, [4]; State ex rel. State Highway Commission v. Wright, Mo., 312 S.W.2d 70. In the Clark case, supra, 121 Mo. at 194, 25 S.W. at 198, the court said:

"Where the condemning company proposes to reserve to the landowner some right or easement not reserved by the statute, the reservation should be made in the original or by an amended petition. In other words, the petition should * [specially] set forth what the company proposes to take. The easement reserved to the landowner should be specifically defined and located, so that the rights of the parties may be then and thereafter protected. If the proposed reservation is not specifically stated and defined, the court can sustain a motion to make the petition more specific and definite in this respect."

On rehearing, 121 Mo. at 200, 25 S.W. at 908, the court held that an amendment of such a nature would entitle the landowners to a postponement if they were taken by surprise. In Shell Pipe Line Corporation v. Woolfolk, 331 Mo. 410, 53 S.W.2d 917 at [1–3] p. 918, it was held that the decision to exercise less than the full rights available under the statute should be expressed with reasonable certainty in the petition or in the amendment. Seizing upon this requirement, respondents urge that, to quote from their brief, " * * * if the amendment had been permitted as presented, the issues

---

* The report in 25 S.W. at 198 contains the word in brackets in the quotation

although that word does not appear in the report in 121 Mo. at 194.

would have been so confused that the jury could not have had the proper evidence as to the actual conditions * * *." Their contention is that due to the complex nature of the provisions of Exhibit A, the amendment did not comply with the requirement that any reservation to the respondents or diminished taking by the appellant be stated with reasonable certainty.

Respondents' contention that the applicable provisions of Exhibit A would so confuse the jury that it could not understand the actual conditions is without merit for two reasons. In the first place, as is apparent from the Clark case and the other cases cited herein, the appellant could amend its petition if, by the amendment, it reduced the extent of the appropriation. The question raised by the respondents is whether the amendment does so. If it does not, then obviously the trial court did not err in refusing to allow the amendment because the situation would have been no different under the amended petition than under the original petition. On the other hand, if the proposed amendment did confer something of value on the respondents, or put another way, did reduce or limit the taking by the appellant, then the appellant should have been allowed to amend its petition. St. Louis K. & N. W. Ry. Co. v. Clark, supra. This question is certainly one susceptible to expert opinion. Due to the progress of the work, the fall of the land, the depth of the well and other factors, the opinion of the experts may be that these lines could not be placed and maintained in accordance with the requirements of Exhibit A in any event. On the other hand, their opinion may be that the lines could have been so placed but the cost would be so prohibitive that the right to do so is valueless as water could be more economically obtained elsewhere or by drilling a new well on the 12-acre tract. Still another alternative would be expert testimony that these lines could be placed in accordance with the requirements of Exhibit A and in a manner, having regard to cost and utility, that would render the right to

do so of value to the respondents and, if so, the amendment clearly reduces the appellant's rights in the condemned strip. Or it may be that the experts will disagree upon the matter or that they will offer still different testimony. In any event, the confusion and uncertainty regarding the worth of the reservation to the respondents of the right to put these water lines subject to the requirements of the applicable provisions of Exhibit A, is a proper subject for the introduction of expert testimony. With that testimony, respondents' contentions of confusion may evaporate. Without that testimony, we cannot hold, as respondents would in effect have us do, the fact that the reservation was made subject to the applicable provisions of Exhibit A makes the amendment totally worthless to the respondents and thus not a reduction in the appellant's rights in this condemned strip.

In the second place, the question of whether the amendment actually reduces or limits the rights of the appellant is not properly an issue for the jury. This court has held that issue to be one of law for the court to decide. Union Electric Co. v. Levin, supra. Moreover, the trial court's decision must be, under the facts that were before it and as they appear before us from this record, that this amendment does state a prima facie case of conferring a benefit on the respondents and of reducing or limiting the rights of the appellant. This case was tried upon the theory that absent this amendment, the respondents had no right to put water lines across the condemned strip regardless of in what fashion they might do so. Under the amendment, it is clear that the respondents could put two 4-inch water lines across the condemned strip provided that in doing so they complied with certain requirements. On its face then the amendment would have resulted in reducing the rights of the appellant. Whether or not this prima facie case can be substantiated will depend upon proof as to whether the right to put these water lines across the condemned strip subject to the requirements of Exhibit A actually

confers a benefit to respondents or, because of considerations of cost and utility, the amendment confers something actually of no value. The presence or absence of such proof will determine whether the trial court will regard the amendment as having the effect of reducing the rights of the appellant and whether the trial court will allow the jury to consider the right to put these lines across the right-of-way as going to diminish the respondents' damages. Of course, such proof could not be presented at this trial because the amendment was refused and there was no issue to which such proof would be pertinent. However, at this point in the proceedings, the question is not one of proof, but of pleading.

· Under the provisions of § 509.490 RSMo 1959, V.A.M.S., the allowance of leave to amend after the statutory periods specified in that section have expired is a matter of discretion for the trial court; but, as stated by this court in Union Electric Co. v. Levin, supra, it is to be noted that § 509.490, supra, provides that the court is to grant leave freely when justice so requires. To deny appellant leave to amend where the offered amendment shows on its face that the appellant's rights in the condemned land will be reduced by the amendment is an abuse of discretion and prejudicial error requiring reversal of this judgment and remand of this cause.

The Commissioner recommends that the judgment be reversed and the cause remanded due to the trial court's action in denying appellant leave to amend its petition. The disposition of this case made herein renders consideration of appellant's other allegations of error unnecessary.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded.

RUDDY, Acting P. J., and FRANK W. HAYES and RAY E. WATSON, Special Judges, concur.