**MISSOURI PUBLIC SERVICE COMPANY, Appellant,**

v.

**Glenn ARGENBRIGHT and Lucille Argenbright (Exceptions of Glenn Argenbright and Lucille Argenbright), Respondents.**

**No. 54540.**

Supreme Court of Missouri, Division No. 1.

July 13, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 14, 1970.

Lowell L. Smithson, Howard F. Sachs, Kansas City, Ray L. Shubert, Charles Hight, Harrisonville, for appellant; Spencer, Fane, Britt & Browne, Kansas City, Shubert & Hight, Harrisonville, of counsel.

Elvin S. Douglas, Jr., Robert W. Spangler, Harrisonville, for respondents; Crouch, Crouch, Douglas & Spangler, Harrisonville, of counsel.

THEODORE McMILLIAN, Special Judge.

■ This is an action brought by Missouri Public Service Company, plaintiff electric utility (Utility) to acquire a transmission line easement, together with the right of access thereto, across certain land lying in Cass County, Missouri, belonging to defendants, Glenn and Lucille Argenbright (the Argenbrights). The jury assessed the Argenbrights' damages at $65,-000. Before entering judgment, the court applied a credit of $8,500, representing Utility's earlier payment of the Commissioners' award assessing the landowners' total damages. Utility has appealed. Since Utility's expert testified to damages ranging from $1,600 to $3,700, the amount in controversy is in excess of $15,000; there-

fore, we have jurisdiction pursuant to Article V, Section 3 of the Constitution of the State of Missouri, V.A.M.S.

Utility claims three errors: Point I that the verdict was excessive and unsupported by substantial evidence in the following respects: (a) it was in excess of Commissioners' award and similar verdicts, (b) it was based upon an erroneous legal construction of access rights treating the same as a "blanket easement," (c) it was based on speculation that financing of improvements would be impossible and that destruction of improvements might occur; and (d) it was based on an erroneous suppression of argument that reasonable use by the landowners might be anticipated.

Point II contended that the court erroneously compelled amendment of the petition during trial at the request of the Argenbrights, enlarging the taking by eliminating some restrictions on the use of access rights, thus forcing Utility to acquire and pay for more land than it required.

The final claimed error is Point III, which denied a continuance after permitting an amendment of the petition during trial, when the amendment changed the issues and was the basis for the Argenbrights' largest claim of damages.

Since there is a claim that there was no substantial evidence to support the verdict, a brief résumé of the evidence is set out. Other evidence, of course, will be developed in the course of the opinion, if needed. The Argenbrights are the owners of 160 acres of land which has been used as a farm and which they valued at $160,000 prior to the easement. Their property is located southeast of Belton, about a mile south of Raymore, on the east side of the Raymore-Peculiar blacktop road. A gravel road is along the south side of the farm. Improvements are on the west side of the quarter section near the blacktop road.

Utility condemned an easement for power line purposes over a right-of-way strip 150 feet in width for a distance of 2248

feet across land owned by the Argenbrights. In addition, the Argenbrights claim that Utility condemned rights of ingress and egress to and from the said right-of-way over their entire 160-acre farm. To substantiate the claim, they point to paragraph 8 of Utility's petition:

"8. That plaintiff for itself and its lessees, * * * assigns does not seek, and it is not the purpose of this condemnation proceeding, to appropriate or take a full and complete easement to the extent permitted by Section 523.010 of the Revised Statutes of Missouri of 1959, on, over or under any tract of land herein described, which any defendant or defendants own or have a compensable interest therein, but only an easement and right-of-way, in order to survey, locate, construct, operate, patrol, inspect, maintain, alter, add wires, repair, relocate, rebuild or remove, on, over and under said right-of-way, an electric transmission line and all structures, appurtenances and appliances necessary in connection therewith, together with the right of ingress and egress to and from the right-of-way, the right to keep said right-of-way free and clear of trees, brush, buildings, structures or other obstructions on or adjacent to said right-of-way whenever the same would interfere with or endanger plaintiff's use of said easement, and with the further right to have the privilege of installing gates at appropriate locations where fences are located, or may in the future be located, for the purpose of gaining access to and exit from said right-of-way when exercising its right of ingress and egress, plaintiff [will whenever practicable use existing private roads or lands of the defendant or defendants, and] shall repair any damage caused by its use thereof. Plaintiff further states that in addition to the damages, if any, that may be awarded any defendant or defendants herein, as compensation for the appropriation of said easement, it will also pay damages caused to crops or property, if any, belonging to any defendant or defendants, or in which any defendant or defendants herein have a compensable interest, if such damages result from the exercise of the rights herein sought. The easement and right-of-way herein sought by plaintiff shall not divest any defendant or defendants herein of the right to use and enjoy any tract of land herein described which defendant owns or has a compensable interest therein, provided, however, such use shall not interfere with the uses sought to be made of such land by the plaintiff, and provided further that no building shall be constructed on the easement without written permission from plaintiff." [Words enclosed in brackets were stricken.]

Defendants' value evidence was placed before the jury by evidence of witnesses Walker and Curd, both qualified brokers familiar with land values in the area. James Curd, a real estate broker from Harrisonville, Missouri, testified that the highest and best use, in describing Argenbrights' lands and improvement, was a small tract subdivision development (5 and 10 acre tracts); that the fair market value of the 160 acre tract immediately prior to the easement being impressed upon the realty was $180,000, and that the "after-taking" value on January 19, 1967, was $84,000, causing damages totaling $96,000 by reason of the rights appropriated; that the "blanket easement" reduced the use of the entire quarter section to agricultural purposes or $350 per acre. His explanation was that the "blanket easement" goes on the abstract and "makes it more difficult to obtain financing, almost impossible."

Vernon Walker, a real estate broker, testifying for the Argenbrights, gave his opinion of the value of the property prior to the taking as $175,000—"after-taking," as $91,000 with total damages as $84,000. He, too, testified that the "blanket easement" would make it hard to develop because of the financing situation. Mr. H. G. Bartz, President of Mission Investment

Company, a large mortgage banking business in the Kansas City area, testified that his business was to make real estate secured loans that were salable to banks, insurance companies, and investment firms. He further testified that loans on properties for housing construction were not salable on lands on which general easements of ingress and egress over entire tracts had been given, and the land would be adversely affected as to mortgageability for residential financing; that based upon his fourteen years of experience, a loan would not be made by his firm or the industry, upon property subjected to a blanket right and easement over the entire tract and that such loans would not be salable. The Argenbrights also offered purchaser witnesses the price paid for certain tracts considered by the expert-value witnesses to be comparable to the tract in question and located nearby. Briefly summarized, there were: 5 acres, $960 per acre; 25 acres, $800 per acre; 20 acres, $1,000 per acre, etc. All of the tracts were unimproved acreages along road frontages comparable to the Argenbright property.

Glenn Argenbright testified that he obtained the property in 1951, and had used it primarily for farming, that in his opinion the value was $160,000 prior to the easement, and approximately $350 per acre ($56,000) after the easement, for total damages of $104,000.

The Argenbrights' evidence generally was that the area was rapidly becoming one of small tract or acreage residential development; area was 4 miles from the Kansas City corporate limits, 2 miles to the Peculiar—Raymore communities; and all in all a good place to live; that commuters from Kansas City, and other persons desirous of moving out of the metropolitan area, had created a good market for residential development.

To the contrary, for Utility, the testimony by Ronald West, a banker from Warrensburg, was that he had made loans on property with the type of power line ease-

ment in this case. Curtis T. Bliss, Kansas City real estate appraiser, testified that in evaluating the Argenbright property after the taking of the easement, he used sales of property with transmission line easements to determine the reduced value, which he fixed at $113,850—$111,900, the damage being $1,950. He also identified an electric transmission line easement, containing the right of ingress and egress, on property on which Prudential Insurance Company made a loan, and, as director of Federal Saving and Loan Company, he knew of no denial of a loan, based on an easement right of ingress and egress; that about 90% of the loans are for single-family residences, some of which have electric transmission lines with the right of ingress and egress.

Witness Martha Warren, real estate broker, gave her opinion of the "before" value of the property as $64,000 and an "after" value of $62,400, net damages, $1,600. Witness Ira Layton, agreed with Mrs. Warren that the highest and best use of the land was for agricultural purposes, and his "before" taking value was fixed at $72,000 and "after" value, $68,300; total damages, $1,950. None of Utility's witnesses gave any evidence of sales prices.

Point I(a) claims that the jury award should be set aside because it is far in excess of the Commissioners' award and verdicts in similar cases: United States v. 34.-5 Acres in Ozark County, Mo., W.D.Mo., 107 F.Supp. 832; Stortenbecker v. Iowa Power and Light Company, 250 Iowa 1073, 96 N.W.2d 468; Missouri Public Service Company v. Durham, Mo.App., 325 S.W.2d 807; State, ex rel. Kansas City Power & Light Company v. Salmark Home Builders, Inc., Mo.Sup., 350 S.W.2d 771; State ex rel. Kansas City Power & Light Company v. Campbell, Mo.App., 433 S.W.2d 606; Union Electric Company of Missouri v. McNulty, Mo.Sup., 344 S.W.2d 37. Utility reargues matters in evidence favorable to its own position properly addressable only to the jury, and attempts to dem-

onstrate excessiveness of the award by comparison to awards in other cases.

■ We recognize that an appellate court may, in a proper case, interfere where the damages in condemnation are grossly excessive or inadequate. City of St. Louis v. Buselaki, 336 Mo. 693, 80 S. W.2d 853; City of St. Louis v. Turner, 331 Mo. 834, 55 S.W.2d 942. Still, it has been repeatedly held that an award of damages supported by substantial evidence will not be disturbed. City of St. Louis v. Schopp, 325 Mo. 480, 30 S.W.2d 733; Prairie Pipe Line Co. v. Shipp, 305 Mo. 663, 267 S.W. 647. In the case of State ex rel. Kansas City Power & Light Company v. Campbell, supra, the Kansas City Court of Appeals, followed our rule in the Buselaki case, stating:

> " 'A judgment in a condemnation proceeding should not be disturbed "because of a disparity in the testimony of witnesses or even because of a seeming preponderance of the evidence one way or another," * * * and it has been held specifically that the opinion of one qualified witness as to the extent of damage "would constitute substantial evidence" ' "

Moreover, in State ex rel. State Highway Commission v. Tighe, Mo.Sup., 386 S.W. 2d 115, we affirmed the trial court's judgment in the sum of $41,500, where there was conflicting testimony of the land's best use and value (condemnors—$30,700 to $33,200; condemnees—$145,000 to $170,-000; and Commissioners award of $75,-000). In our opinion, this demonstrates not only that the award by the Commissioners is of no relevance in an appellate determination of the sufficiency of the evidence to sustain the assessment of damages, but also that such assessment properly may be held to have been supported by substantial evidence even though the trier of the facts found damages in a sum neither approximating nor approaching the opinion of any expert witness. See also State ex rel. State Highway Commission v. Grissom, Mo.App., 439 S.W.2d 13; State

ex rel. Kansas City Power & Light Company v. Campbell, supra; State ex rel. N. W. Electric Power Co-op., Inc. v. Stewart, Mo.App., 440 S.W.2d 146.

■ Even a cursory reading of the evidence as set out fully herein shows that there was substantial evidence before the jury upon which to base its award; consequently, Point I(a) will be denied.

Taking up Point I(b), we consider Utility's claim that the verdict was based upon an erroneous legal interpretation of the access rights contained in the easement; i.e., treating it as a "blanket easement." Stotzenberger v. Perkins, 332 Mo. 391, 58 S.W. 2d 983; Bolomey v. Houchins, Mo.App., 227 S.W.2d 752; Otter Tail Power Company v. Malme, N.D., 92 N.W.2d 514; Union Electric Co. v. Levin, Mo.App., 304 S.W.2d 478; State ex rel. State Highway Commission v. Curtis, 359 Mo. 402, 222 S.W.2d 64; Tracy v. Klausmeyer, Mo.App., 305 S. W.2d 84; Beetschen v. Shell Pipe Line Corp., 363 Mo. 751, 253 S.W.2d 785; Westphal v. Kentucky Utilities Company, Ky. App., 343 S.W.2d 367; Kelly v. Schmelz, Mo.App., 439 S.W.2d 211; DiPasco v. Prosser, 364 Mo. 1193, 274 S.W.2d 279.

The thrust of Utility's argument is that the Court placed an unwarranted legal interpretation on the easement which cannot be supported by the language of the petition, and which grossly distorts and enlarges the otherwise minimal damages which could be conceivably attributed to the "ingress and egress" provision.

On the other hand, Argenbright's position is that the easement of ingress and egress over the entire farm was appropriated and gave the condemnor the power to go upon the premises at all times to exercise their rights they have acquired for such purposes as may be necessary. Hence, any further improvement is subject to this easement as a matter of law. So, if this right is take into consideration in conjunction with the testimony that the highest and best use for future development of the property is for small tract, residential

subdivision purposes, and the fact that all such future residences would be subjected to this easement prior to their being located upon the premises, then their property has suffered substantial damages. Utility counters that the right to destroy improvements was not "specified or reasonably implied," which is the test of what is taken. Union Electric Co. v. Levin, supra. "Also," says Utility, "once an easement has been taken, the courts will vigilantly protect the respective rights of both parties." Tracy v. Klausmeyer, supra. Utility further says that nothing passes as an incident to the grant of an easement but what is requisite to its fair enjoyment. Notwithstanding such a grant, there remains with the owner of the servient estate the right of full dominion and use of their land, "except so far as a limitation thereof is essential to the reasonable enjoyment of the dominant easement." Stotzenberger v. Perkins, supra, 58 S.W.2d, l.c. 987. Furthermore, Utility argues where the rights of the parties have not been established, the interest of both parties will be considered, and the owner of the dominant estate will be entitled to a "reasonably convenient and accessible way" within the premises. Bolomey v. Houchins, supra, 227 S.W.2d, l.c. 752. And if the owner of the dominant estate acts unilaterally and unreasonably, he exposes himself to an action for both actual and punitive damages, Beetschen v. Shell Pipe Line Corp., supra.

The Argenbrights, on the other hand, charge that Utility misses the brunt of their argument, the gist of which is not the rule of reason, but rather the money lenders' attitude toward such easement being the important consideration affecting value of the property. In other words, it was not so much that Utility would unreasonably use the easement, but merely that Utility had the right to go across their property, and it is that right which is the damaging feature.

As we read paragraph 8 of the petition, we find and hold that the right to ingress and egress to the right-of-way gave Utility the right to access from any point on Argenbrights' property. We also presume that Utility will exercise its rights to the fullest extent. See State ex rel. State Highway Commission v. Johnson, Mo.Sup., 287 S.W.2d 835. Moreover, mere promises of intention not to use a right or a privilege either specified or reasonably implied are not sufficient to exclude the consideration thereof in the assessment of damages. City of St. Louis v. Senter Commission Co., 336 Mo. 1209, 84 S.W.2d 133.[1] Neither the above finding nor the presumption leads us to conclude that Utility in the exercise of its general easement can unreasonably burden the servient tenement in its use and enjoyment thereof. In other words, in our opinion, an easement granted or reserved in general terms without any limitations as to its use, is one of unlimited reasonable use.[2] It cannot be said that Utility specified the right to destroy improvements. To the contrary, the right to ingress and egress was subject to the limitation that the Argenbrights retain "the right to use and enjoy (their land) provided, however, such use shall not interfere with the uses sought to be made of such land by Utility, and provided further that no building shall be constructed on the easement without written permission." (Emphasis ours.) The only other limitation on building is that Utility has "the right to keep said right-of-way free and clear of trees, brush, etc., on or adjacent to said right-of-way whenever the same could interfere with or endanger Utility's use of the easement." Nowhere does the petition limit construction of buildings away from the easement.

While we agree, in principle, with Argenbrights' construction of Shell Pipe Line Corporation v. Woolfolk, 331 Mo. 410, 53 S.W.2d 917, it is only authority for the

---

1. 29A C.J.S. Eminent Domain § 265, p. 1124; 27 Am.Jur.2d, § 398, p. 277.

2. 25 Am.Jur.2d Easements and Licenses, § 74, p. 480.

proposition that a utility cannot informally limit its taking by evidence or argument at the time of trial. Furthermore, Woolfolk held that "the presumption is that the appropriator will exercise his rights and use * * * to the full extent." 53 S.W.2d, l.c. 918. In the case at bar "full exercise" while presumed is not incompatible with reasonable action.

The Argenbrights also cite Kelly v. Schmelz, Mo.App., 439 S.W.2d 211, which does touch upon this appeal. But also it contains comments which contradict their view that Utility has acquired an absolute right to destroy buildings on the farm property. In the Kelly case, the owner of a residence obtained an undefined "easement 18 feet wide" across the defendant's land. The easement was used as a roadway. A dispute arose when plaintiff attempted to bring electricity to the residence by means of an electric line within the easement area. The St. Louis Court of Appeals reviewed at length authorities which indicated that an undescribed or general easement created "a general right of way for all reasonable purposes."[3] See also Fleming v. Napili Kai, Ltd., 50 Haw. 66, 430 P.2d 316. Accordingly, we hold that while an easement in the language set forth in paragraph 8 of the petition will permit the condemnees, for purposes of the assessment of damages, to show the effect, if any, of such an easement on the salability of condemnees' property, it is altogether unwarranted to permit the jury to speculate that the right to get to the right-of-way is a license for unlimited destructive intrusion on the entire Argenbright farm. This brand of speculation is violative of the rule of reason.

Moreover, the error was compounded by the court erroneously sustaining the Argenbrights' request to strike a certain portion of Utility's petition. The portion stricken, enclosed in brackets, reads as follows: "when exercising its right of ingress and egress, plaintiff [will whenever practicable use existing private roads or lanes of the defendant * * *, and] shall repair any damage caused by its use." The Argenbrights argued to the Court that the stricken portion of the petition was a self-serving, improper attempt to mitigate damages. In the Woolfolk case, supra, 53 S.W.2d, l.c. 918, we said, "[a]nd our decisions hold that the condemning party's purpose to exercise less than the full rights available under the statute should appear with reasonable certainty in the petition or be brought in by way of amendment thereto." Furthermore, it is proper to amend pleadings either to abandon or to reduce the rights taken during the course of the proceedings and after the Commissioners have made their award, but it is not allowable to amend to enlarge the rights taken. Union Electric Co. v. Levin, supra, finding reversible error when Circuit Court refused to permit an amendment reducing the property taken; State ex rel. Morton v. Allison, Mo.Sup., 365 S.W.2d 563, l.c. 565, "* * * there seems little doubt that, after a report of Commissioners has been filed, amendments will generally not be permitted which would include different or additional lands, which would substantially change the issues, or which would prejudice the rights of the opposing parties." Also, the scope of a condemnation is to be determined by the condemnor rather than by condemnee, and it is error for a court to force a taking of rights not desired by the condemnor and for which it is unwilling to pay.[4] So here, the striking of portion of the petition not only enlarged the nature of the rights taken, but also forced Utility to take rights not desired. Consequently, after the sustention of Argenbrights' motion to strike, it is readily understandable that the court at their insistence refused to permit any argument to support the rule of reason to mitigate damages.

---

3. 28 C.J.S. Easements § 87, pp. 766–767.

4. 29A C.J.S. Eminent Domain § 265, p. 1127.

■ Finally, we take up the court's denial of Utility's motion for a continuance. We recognize that the denial of a continuance rarely is reversible error; yet, the trial court enjoys neither an absolute nor an arbitrary discretion, and the court's action will be reversed if there has been an abuse of discretion. Schroeder v. Prince Charles, Inc., Mo.Sup., 427 S.W.2d 414; Van Fleet v. Van Fleet, Mo.App., 253 S.W.2d 508.

■ In the instant case, since a similar motion had been previously overruled, Utility claimed surprise. The purpose of the amendment was to take away Utility's contentions that it would make reasonable use of its access rights. Besides, after having granted the amendment, to deny a continuance effectively took away from Utility the chance to consider the effect of the amendment and to consult with its engineers to determine whether or not the right of access provision could be eliminated, or to confine the ingress and egress to the ends of the right-of-way (see pleading in Union Electric Company of Mo. v. Simpson, Mo.App., 371 S.W.2d 673), for such an easement. The Argenbrights argue that a continuance would not permit Utility to amend the ingress and egress rights so as to confine future access to the ends of the right-of-way. They assert that after the line was constructed and possession taken of the rights condemned, the law forbids such an amendment. State ex rel. State Highway Commission v. Deutschman, 346 Mo. 755, 142 S.W.2d 1025. The Deutschman case discussed the circumstances under which an entire tract can be abandoned and eliminated from a condemnation proceeding by amendment. The case at bar, not unlike the Levin case, supra, deals with amendments reducing the future rights of a condemnor, which must be entertained in order to avoid the injustice of forcing a condemnor to pay for and retain unnecessary future rights against a landowner's property. Because of the particular circumstances of this case, we hold that Utility's claim of surprise was valid, that the amendment made was substantial and that the failure of the court to grant a continuance was prejudicially erroneous. See Good v. Pennsylvania R. Co., E.D. Pa., 263 F.Supp. 84, affirmed 3 Cir., 384 F.2d 989.

For the reasons stated in Points I(b), II and III, the judgment of the trial court is reversed and the cause remanded for a new trial.

SEILER, P. J., and HOLMAN, J., concur.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.